1   RONALD L. JOHNSTON (State Bar No. 57418)
    ronald.johnson@aporter.com
2   ANGEL L. TANG (State Bar No. 205396)
    angel.tang@aporter.com
3   ARNOLD & PORTER LLP
    777 S. Figueroa Street, Suite 4400
4   Los Angeles, CA 90017
    (213) 243-4000
5
    JAMES COOPER (Motion for Admission *Pro Hac Vice* Pending)
6   james.cooper@aporter.com
    LAURA RIPOSO VANDRUFF (Motion for Admission *Pro Hac Vice* Pending)
7   laura.vandruff@aporter.com
    ARNOLD & PORTER LLP
8   555 12th Street, NW
    Washington, DC 20004
9   (202) 942-5000

10  Attorneys for Defendants
    m-Qube, Inc. and VeriSign, Inc.
11

12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15  ALIZA VALDEZ, individually and on behalf of )   Case No.
    a class of similarly situated individuals,    )
16                                                 )
                    Plaintiff,                     )   **NOTICE OF REMOVAL**
17                                                 )   **UNDER 28 U.S.C. §§ 1332(d) and 1453(b)**
    v.                                             )
18                                                 )
    M-QUBE, INC., a Delaware corporation,          )
19  VERISIGN, INC., a Delaware corporation, and    )
    BUONGIORNO USA, INC., a Florida                )
20  Corporation, d/b/a BLINKO,                     )
                                                   )
21                  Defendants.                    )
                                                   )
22  _____)

23  TO THE CLERK OF THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF

24  CALIFORNIA:

25      PLEASE TAKE NOTICE that Defendants m-Qube, Inc. and VeriSign, Inc. (hereinafter "m-

26  Qube Defendants") hereby remove to this Court the action originally commenced in the Superior

27  Court of the State of California for the County of San Francisco, entitled "ALIZA VALDEZ,

28

1   individually and on behalf of a class of similarly situated individuals, Plaintiff v. M-QUBE, INC., a

2   Delaware corporation, VERISIGN, INC., a Delaware corporation, and BUONGIORNO USA, INC.,

3   a Florida Corporation, d/b/a BLINKO, Defendants," Case Number CGC-07-468362, filed on

4   October 18, 2007. In support thereof, the m-Qube Defendants state the following:

5   **SUMMARY OF COMPLAINT AND BASIS FOR FEDERAL JURISDICTION**

6       1.    Plaintiff purports to represent a nationwide class of wireless telephone subscribers

7   who allegedly have suffered and continue to suffer harm in the form of unauthorized charges for

8   certain mobile content services. Plaintiff avers that Defendants, including the m-Qube Defendants,

9   charged individual members of the alleged class for mobile content services where the

10  authorizations for the alleged charges preceded the date that telephone numbers were assigned to

11  the class members. Plaintiff further alleges that Defendants, including the m-Qube Defendants,

12  have unjustly received and retained money belonging to the putative nationwide class, and Plaintiff

13  asserts that Defendants' actions in this regard constitute unjust enrichment. Plaintiff also claims

14  that Defendants, including the m-Qube Defendants, intentionally interfered with the contractual

15  relationship between members of the purported nationwide class and their wireless carriers. Finally,

16  Plaintiff asserts that Defendants' alleged conduct, including the actions of the m-Qube Defendants,

17  constitute an unfair, unlawful, or fraudulent business act or practice as defined by California

18  Business and Professions Code Section 17200 *et seq*.

19      2.    Plaintiff Aliza Valdez has brought this action as a putative class action, identifying

20  the members of the potential nationwide class as:

21              consisting of all wireless telephone subscribers in the nation who
                were charged by VeriSign, m-Qube, and/or Blinko for mobile content
22              services where the date of authorization for such charges preceded the
                date that the telephone number was assigned to such subscriber by his
23              or her wireless carrier; provided however, that the following are
                excluded from this proposed Class: (i) the defendants; (ii) any
24              employee of defendants.

25  (Compl. ¶ 48.) Plaintiff's Complaint seeks declaratory relief, compensatory damages, exemplary

26  damages, injunctive relief, and attorneys' fees. (Compl., Prayer for Relief ¶¶ A-D, F.)

27

28                                              -2-

1     3.     This Court has original jurisdiction over this action pursuant to the Class Action

2 Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453 ("CAFA"), which grants federal courts jurisdiction

3 over qualifying actions in which there is minimal diversity, there are 100 or more class members,

4 and the aggregate amount in controversy exceeds $5 million. *See* 28 U.S.C. §§ 1332(d)(2)(A),

5 1332(d)(5)(B), 1332(d)(6). The diversity-of-citizenship requirement of 28 U.S.C. § 1332(d)(2)(A)

6 is satisfied in this case in that at least one member of the putative nationwide class is a citizen of a

7 State different from at least one defendant. The class size requirement of 28 U.S.C. § 1332(d)(5)(B)

8 is also satisfied because the number of alleged class members exceeds 100. Finally, the amount-in-

9 controversy requirement of 28 U.S.C. § 1332(d)(2) is satisfied because the aggregate alleged claims

10 of the individual members of the putative class exceed the sum or value of $5,000,000, exclusive of

11 interest and costs.

12     4.     The Superior Court of California, San Francisco County is located within the United

13 States District Court for the Northern District of California. Therefore, venue is proper because it is

14 the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

15     5.     By removing this action to this Court, the m-Qube Defendants do not waive any

16 defenses, objections, or motions available to them under state or federal law. The m-Qube

17 Defendants expressly reserve the right to require that Plaintiff's claims and the claims of the

18 putative class be decided on an individual basis through arbitration.

19 **STATE COURT FILINGS**

20     6.     On October 18, 2007, Plaintiff commenced the instant action by filing a Complaint

21 in the Superior Court of the State of California for the County of San Francisco. A true and correct

22 copy of the Complaint is attached hereto as Exhibit A. The action was designated as Case No.

23 CGC-07-468362.

24     7.     Copies of the Complaint and Summons were mailed to Defendant m-Qube, Inc.'s

25 agent for service of process, and they were received by Defendant m-Qube, Inc.'s agent for service

26 on December 3, 2007. A true and correct copy of the Summons is attached hereto as Exhibit B.

27

28     -3-

1        8.    On November 28, 2007, copies of the Complaint and Summons mailed to Defendant

2    VeriSign, Inc.'s agent for service of process were postmarked. The Complaint and Summons were

3    received by Defendant VeriSign, Inc.'s agent for service on December 3, 2007. A true and correct

4    copy of the Summons is attached hereto as Exhibit C.

5        9.    Also received on December 3, 2007 by the m-Qube Defendants' agent for service

6    were completed Proofs of Service, which are attached hereto as Exhibit D.

7        10.    Also received on December 3, 2007 by the m-Qube Defendants' agent for service

8    were the following materials: Civil Case Cover Sheet; General Order Regarding the Procedural for

9    Approval of Complex Litigation Designation; Notice to Plaintiff Regarding Case Management

10   Conference; Alternative Dispute Resolution Information Package; Form of Stipulation to ADR;

11   Form of Case Management Statement; and, Judicial Mediation Program Information from the

12   Superior Court of California. True and correct copies of the foregoing additional materials received

13   by the m-Qube Defendants' agent for service of process are attached collectively hereto as Exhibit

14   E.

15       11.    Exhibits A through E are the only documents that the m-Qube Defendants believe to

16   be contained in the state court file.

17   **TIMELY REMOVAL**

18       12.    This Notice of Removal is timely pursuant to 28 U.S.C. §§ 1446(b) and 1453(b),

19   because it is "filed within thirty days after the receipt by [Defendants], through service or otherwise,

20   of a copy of the initial pleading setting forth the claim for relief upon which such action or

21   proceeding is based."

22       13.    The m-Qube Defendants first received copies of the Complaint on December 3,

23   2007, when Defendants m-Qube, Inc. and VeriSign, Inc., through their registered agent, were

24   served with copies of the Complaint and Summonses from the Superior Court of the State of

25   California for the County of San Francisco. (Ex. B & C)

26       14.    Upon information and belief, the remaining defendant, Buongiorno USA, Inc.

27   (hereinafter "Buongiorno"), was not served prior to December 3, 2007.

28   -4-

1

**NO JOINDER NECESSARY**

2    15.    No other defendants are required to consent to this Notice of Removal. *See* 28

3    U.S.C. § 1453(b).

4    16.    Defendant Buongiorno does not oppose removal of this action.

5    **NOTICE OF REMOVAL**

6    17.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with

7    the Clerk of the Superior Court of California, County of San Francisco, and Plaintiff's counsel is

8    being duly served with written notice of the removal.

9    **THIS COURT HAS ORIGINAL JURISDICTION**
10    **UNDER 28 U.S.C. § 1332(d)(2)**

11    18.    This Court has original jurisdiction over this action pursuant to CAFA, 28 U.S.C.

12    §§ 1332, 1453, which grants federal courts jurisdiction over qualifying actions in which there is

13    minimal diversity, there are 100 or more class members, and the aggregate amount in controversy

14    exceeds $5 million. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1332(d)(5)(B), 1332(d)(6). It may be

15    removed to this Court by the m-Qube Defendants pursuant to the provisions of 28 U.S.C. §§ 1446

16    and 1453(b).

17    **Diversity-Of-Citizenship**

18    19.    Plaintiff Aliza Valdez is alleged in the Complaint to be a resident of California.

19    (Compl. ¶ 9.)

20    20.    The members of the putative class described in the Complaint are alleged to be

21    citizens of states throughout the nation. Specifically, Plaintiff Valdez purports to bring this action

22    individually and as a representative of putative class defined as

23    consisting of all wireless telephone subscribers *in the nation* who
         were charged by VeriSign, m-Qube, and/or Blinko for mobile content
24    services where the date of authorization for such charges preceded the
         date that the telephone number was assigned to such subscriber by his
25    or her wireless carrier; provided however, that the following are
         excluded from this proposed Class: (i) the defendants; (ii) any
26    employee of defendants.

27

28    -5-

1    (Compl. ¶ 48 (emphasis added)).  The putative class includes, therefore, citizens of states other than

2    California.

3         21.    Defendant m-Qube, Inc. is a Delaware corporation with its principal place of

4    business in Massachusetts.  Defendant m-Qube, Inc. is, therefore, a citizen of Delaware and

5    Massachusetts, and it is not a citizen of California.

6         22.    Defendant VeriSign, Inc. is a Delaware corporation with its principal place of

7    business in California.  Defendant VeriSign, Inc. is, therefore, a citizen of Delaware and California.

8         23.    Upon information and belief, Defendant Buongiorno is a Florida corporation with its

9    principal place of business in Florida.  Defendant Buongiorno is, therefore, a citizen of Florida, and

10   it is not a citizen of California.  (28 U.S.C. § 1348.)

11        24.    The requirements for diversity-of-citizenship set forth in 28 U.S.C. § 1332(d)(2)(A)

12   are thus established.  The purported class consists of putative members who are citizens of states

13   throughout the nation, including states other than California.  In addition, Plaintiff Valdez is a

14   citizen of a state (California) that is different from the state of citizenship of Defendants m-Qube,

15   Inc. (Delaware and Massachusetts) and Buongiorno (Florida).  Therefore, diversity-of-citizenship

16   exists between the parties pursuant to 28 U.S.C. § 1332(d)(2)(A).

17   **Class Action Consisting of More Than 100 Members**

18        25.    Plaintiff purports to represent a nationwide class of "all wireless telephone

19   subscribers *in the nation* who were charged by VeriSign, m-Qube, and/or Blinko for mobile content

20   services where the date of authorization for such charges preceded the date that the telephone

21   number was assigned to such subscriber by his or her wireless carrier."  (Compl. ¶ 48 (emphasis

22   added)).  Plaintiff alleges that "[t]he Class consists of *thousands* of individuals and other entities."

23   (*Id.* ¶ 49 (emphasis added)).  Based on these and other allegations, the aggregate number of class

24   members in Plaintiff's alleged class is greater than 100 for the purposes of 28 U.S.C.

25   § 1332(d)(5)(B).

26

27

28

1    **Amount-In-Controversy**

2        26.    The amount-in-controversy requirement of Section 1332(d)(2) is satisfied because

3    the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs.

4        27.    Plaintiff alleges that Defendants have "[f]or years ... systematically, repeatedly and

5    without authorization caused charges to be placed on the cell phone bills of thousands of consumers

6    ...." (Compl. ¶ 7.)

7        28.    Plaintiff has sued three separate defendants, asserted multiple theories of liability,

8    and seeks a range of broad and far-reaching relief, including compensatory damages, exemplary

9    damages, injunctive relief, and attorneys' fees.

10       29.    Although the m-Qube Defendants deny that they have any liability to Plaintiff or the

11   putative class, and they further deny that any such class could be properly certified under Fed. R.

12   Civ. P. 23,[1]  Plaintiff seeks to require the m-Qube Defendants to pay compensatory and exemplary

13   damages as relief to the putative nationwide class for a period of "years," as Plaintiff alleges, of

14   "systematic[] [and] repeated[]" conduct. (Compl. ¶ 7.) In addition, Plaintiff and the putative class

15   seek injunctive relief (see Compl., Prayer for Relief ¶ F), which would involve additional costs of

16   compliance. Plaintiff and the putative class also allege that they are entitled to an award of

17   attorneys' fees. (See Compl., Prayer for Relief ¶ D.) All told, Plaintiff seeks to recover "economic,

18   monetary, actual, consequential, and compensatory damages," exemplary damages, costs and

19   attorneys' fees, pre- and post-judgment interest, and injunctive relief from the m-Qube Defendants.

20       30.    The total amount of any award against the m-Qube Defendants and in favor of

21   Plaintiff and the proposed nationwide class would appear to be substantial. In addition, the m-Qube

22   Defendants' cost of complying with an award of injunctive relief on the claims alleged in the

23   Complaint would appear to be substantial.

24

25   _____

26   [1] By removing this action under CAFA, the m-Qube Defendants do not concede that they have any liability, let alone liability greater than $5 million, to Plaintiff and members of the putative class.

27   See, e.g., Key v. DSW, Inc., 454 F. Supp. 2d 684, 691 (S.D. Ohio 2006).

28                                                 -7-

1    31.    The alleged aggregate amount in controversy with respect to the m-Qube Defendants

2    alone exceeds $5 million. *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the

3    individual class members shall be aggregated to determine whether the matter in controversy

4    exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

5    32.    Plaintiff also seeks relief from Defendant Buongiorno under the same causes of

6    action pleaded as to the m-Qube Defendants. The relief sought by Plaintiff and the putative class

7    from Defendant Buongiorno is identical to the relief sought from the m-Qube Defendants, and the

8    total amount of any award and of complying with an award of injunctive relief would appear to be

9    substantial.

10    33.    If the defendants' aggregate amounts in controversy are taken together in the

11    aggregate, the total exceeds the sum or value of $5 million. *See, e.g., Kearns v. Ford Motor Co.*,

12    No. CV 05-5644, 1005 U.S. Dist. LEXIS 41614, at *19 (C.D. Cal. Nov. 21, 2005) (finding that

13    aggregation under CAFA "run[s] across all defendants").

14    34.    The amount placed in controversy requirements set forth in 28 U.S.C. § 1332(d)(6)

15    are thus established.

16    ## THIS CASE DOES NOT FALL UNDER THE DISCRETIONARY
17    ## EXCEPTION CONTAINED IN 28 U.S.C. § 1332(d)(3)

18    35.    There is no reason to believe that more than one-third but fewer than two-thirds of

19    the members of the putative nationwide class are citizens of California. Indeed, Plaintiff has alleged

20    that the class includes "all wireless telephone subscribers in the nation" who claim to have been

21    harmed by the conduct alleged in the Complaint. Thus, the provisions of 28 U.S.C. § 1332(d)(3),

22    which allow a court to decline to exercise jurisdiction in certain circumstances, do not apply in this

23    case.

24    ## NO BASIS EXISTS FOR THIS COURT TO DECLINE TO
    ## EXERCISE JURISDICTION UNDER 28 U.S.C. § 1332(d)(4)

25    36.    The Court cannot decline to exercise jurisdiction over this action under Section

26    1332(d)(4). During the three-year period preceding the filing of this action, other purported class

27

28

-8-

1    actions have been filed asserting similar factual allegations against Defendant m-Qube and/or

2    Defendant VeriSign. *See, e.g., Knox, et al. v. m-Qube, Inc.,* No. 1:07-cv-10124-NMG (D. Mass.

3    2007); *Pishvaee v. VeriSign, Inc., et al.,* No. C-07-3407-JW (N.D. Cal. 2007); *Jiran, et al. v. AT&T*

4    *Mobility, LLC,* et al., No. CGC-07-468268 (Cal. Super. Ct. 2007).

5          37.    Moreover, the Court cannot decline jurisdiction under Section 1332(d)(4) for the

6    separate and independent basis that there is no reason to believe that more than two-thirds of the

7    members of the putative nationwide class are citizens of California. Indeed, Plaintiff has alleged

8    that the class includes "all wireless telephone subscribers in the nation" who claim to have been

9    harmed by the conduct alleged in the Complaint. In addition, two of the three defendants in this

10   action are not citizens of California.

11         38.    Thus, neither Section 1332(d)(4)(A) nor (B) applies, and because they do not apply,

12   there is no basis for remand.

### THIS CASE DOES NOT FALL UNDER ANY EXCEPTION TO REMOVAL OF CLASS ACTIONS PURSUANT TO 28 U.S.C. § 1453(d)

15         39.    The Complaint does not contain a claim concerning a covered security as defined

16   under Section 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)) or Section 28(f)(5)(E) of

17   the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E)).

18         40.    The Complaint does not contain a claim that relates to the internal affairs or

19   governance of a corporation or other form of business enterprise, nor does it arise under or by virtue

20   of the laws of the State in which such corporation or business enterprise is incorporated or

21   organized.

22         41.    The Complaint does not contain a claim that relates to the rights, duties (including

23   fiduciary duties), or obligations relating to or created by or pursuant to any security (as defined

24   under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) or the regulations issued

25   thereunder).

-9-

WHEREFORE, the m-Qube Defendants respectfully remove this action now pending
against them in the Superior Court of California, County of San Francisco, to this Honorable Court.

Dated: December 28, 2007                    Respectfully submitted,

                                            ARNOLD & PORTER LLP

                                            By: _____
                                            Ronald L. Johnston (State Bar No. 57418)
                                            Angel L. Tang (State Bar No. 205396)
                                            777 S. Figueroa Street, Suite 4400
                                            Los Angeles, CA 90017
                                            (213) 243-4000

                                            James Cooper
                                            *Motion for Admission Pro Hac Vice Pending*
                                            Laura Riposo VanDruff
                                            *Motion for Admission Pro Hac Vice Pending*
                                            555 12th Street, NW
                                            Washington, D.C. 20004
                                            (202) 942-5000

                                            *Attorneys for Defendants*
                                            *m-Qube, Inc. and VeriSign, Inc.*

-10-

# Exhibit A

10/25/2007    09.13  One Legal, Inc.                    (FAX)415 437 9684              P.004/028

1   TERRY M. GORDON - SBN 75604
    LAW OFFICES OF TERRY M. GORDON
2   Three Harbor Drive, Suite 215
    Sausalito, California  94965
3   Telephone:    (415) 331-3601
    Facsimile:    (415) 331-1225
4

5   JOHN G. JACOBS (pending PRO HAC VICE)
    BRYAN G. KOLTON (pending PRO HAC VICE)
6   THE JACOBS LAW FIRM, CHTD.
    122 South Michigan Avenue
7   Suite 1850
    Chicago, Illinois 60603
8   Telephone: (312) 427-4000
    Facsimile: (312) 427-1850
9

10  JAY EDELSON (pending PRO HAC VICE)
    MYLES MCGUIRE (pending PRO HAC VICE)
11  KAMBEREDELSON, LLC
    53 West Jackson Boulevard, Suite 1530
12  Chicago, Illinois 60604
    Telephone: (312) 589-6370
13  Facsimile: (312) 873-4610

14

15  ATTORNEYS FOR PLAINTIFF

16              SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                 FOR THE COUNTY OF SAN FRANCISCO

18
    ALIZA VALDEZ, individually and on behalf  ) Case No.
19  of a class of similarly situated individuals,  )
                                               )  CGC07-468362
20              Plaintiff,                      )
                                               )  COMPLAINT FOR DAMAGES
21                                             )  AND INJUNCTIVE RELIEF
    v.                                         )  [RESTITUTION/UNJUST
22                                             )  ENRICHMENT; TORTIOUS
                                               )  INTERFERENCE WITH A
23  M-QUBE, INC., a Delaware corporation,      )  CONTRACT; UNLAWFUL,
    VERISIGN, INC., a Delaware corporation,    )  UNFAIR AND DECEPTIVE
24  and BUONGIORNO USA, INC., a Florida        )  BUSINESS PRACTICES (CAL.
    Corporation, d/b/a BLINKO,                 )  BUS. & PROF. CODE §17200, et
25                                             )  seq.)]
                Defendants.                    )
26                                             )
                                                  DEMAND FOR JURY TRIAL
27                                                CLASS ACTION

28
    COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

ENDORSED
FILED
San Francisco County Superior Court

OCT 1 8 2007

GORDON PARK-LI, Clerk
BY: CRISTINA E. BAUTISTA
            Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

MAR 2 1 2008 -9:00 AM

DEPARTMENT 212

BY FAX

| | |
|---|---|
| 1 | <div align="center">**CLASS ACTION COMPLAINT**</div> |
| 2 | Plaintiff Aliza Valdez ("Valdez") on behalf of herself and a class, brings this class |
| 3 | action against m-Qube, Inc. ("m-Qube"), VeriSign, Inc. ("VeriSign") and Buongiorno USA, |
| 4 | Inc. ("Blinko") seeking to stop Defendants' practice of causing cellular telephone customers |
| 5 | to be billed for mobile content services ordered not by them, but rather by the customer |
| 6 | previously assigned their telephone number, and to obtain redress for all persons injured by |
| 7 | their conduct. Plaintiff alleges as follows upon personal knowledge as to herself and her own |
| 8 | acts and experiences, and, as to all other matters, upon information and belief, including |
| 9 | investigation conducted by her attorneys. |
| 10 | <div align="center">**NATURE OF THE CASE**</div> |
| 11 | 1.    The increased use of cell phones has given rise to a new industry that provides |
| 12 | so-called "mobile content" services such as ringtones, text alerts, jokes, news, games, and |
| 13 | daily horoscopes to cell phone users' mobile devices. The providers of mobile content (the |
| 14 | mobile "content providers") charge for their services and cause such charges to be placed |
| 15 | directly on customers' cell phone accounts through their wireless carriers (the "carriers"). |
| 16 | The carriers then bill and collect such amounts, serving as partners in these transactions, |
| 17 | retaining a portion of all revenue that they collect on account of mobile content services. |
| 18 | 2.    Because mobile content providers, such as Blinko, are typically unable to |
| 19 | establish a direct billing and content delivery relationship with the carriers, they most often |
| 20 | turn to one of a handful of companies known in the industry as "aggregators," such as m- |
| 21 | Qube and VeriSign, that act as billing intermediaries without whom the mobile content |
| 22 | providers would generally be unable to provide and bill for their mobile content services. |
| 23 | 3.    While aggregators such as VeriSign and m-Qube charge their content provider |
| 24 | clients some upfront fees, their revenue is primarily generated through a "revenue share" on |
| 25 | transactions for which they bill the carriers' customers: each time a charge is incurred in |
| 26 | connection with an alleged purchase of mobile content services offered by a content provider, |
| 27 | |
| 28 | |

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

<div align="center">2</div>

1    the aggregator and the content provider cause the charge to be billed directly on the cellular

2    telephone bill of the carrier's customer who currently owns and/or uses the telephone

3    number claimed to be associated with that purchase.

4         4.     The carrier then bills and collects the charges from its current customer,

5    retains a substantial portion of the proceeds as its "revenue share" and then remits the

6    balance to the aggregator, i.e., m-Qube or VeriSign, who retains a percentage of the balance

7    in the form of its own "revenue share" and who then, in turn, remits the balance to its content

8    provider client, e.g., Blinko.

9         5.     In a widespread industry practice little known by those outside the industry,

10   but known to Defendants, carriers such as AT&T Mobility, LLC d/b/a Cingular Wireless

11   ("Cingular"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), Sprint-Nextel

12   Corporation ("Sprint") and T-Mobile USA, Inc. ("T-Mobile"), among many others, routinely

13   "recycle" so-called "dirty" telephone numbers to their customers when they sign up for new

14   cellular telephone service. The numbers are "recycled" in that they were previously assigned

15   to other persons or entities. The numbers are "dirty" in that they are encumbered with pre-

16   existing billing obligations for products and services authorized to be purchased by the

17   carriers' subscribers previously assigned those numbers.

18         6.     Despite their knowledge about the problem of recycled dirty numbers,

19   Defendants have helped create and maintain a system through which cell phone users are

20   billed for mobile content services ordered not by them, but by the previous subscribers

21   assigned their cell phone numbers.

22         7.     As a result, for years Defendants have systematically, repeatedly and without

23   authorization caused charges to be placed on the cell phone bills of thousands of consumers

24   across the country for content that was never authorized to be purchased by the current

25   subscribers of the affected phone numbers, but rather by the previous subscribers assigned

26   such cell phone numbers, and they have profited enormously from their wrongful conduct, in

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    violation of: (a) the common law of unjust enrichment; (b) the common law of tortious

2    interference with a contract; and (c) in violation of California Business and Professions Code

3    section 17200 consumer fraud provisions.

4        8.    Plaintiff seeks on behalf of herself and the class members, money damages,

5    disgorgement, injunctive and declaratory relief, costs, and reasonable attorney's fees.

6                                    **PARTIES**

7        9.    Plaintiff Aliza Valdez is a citizen of California.

8        10.    Defendant m-Qube, Inc., is an "aggregator" that operates a mobile transaction

9    network that processes mobile payments on its behalf and on behalf of carriers and mobile

10    content providers. m-Qube is a Delaware corporation with its headquarters and principal

11    place of business in Mountain View, California. m-Qube does business throughout the

12    United States, including the State of California and this County.

13        11.    Defendant VeriSign, Inc. is an aggregator with a self-proclaimed "market-

14    leading portfolio of managed communications and content offerings" whose operations have

15    become essentially merged with those of its subsidiary m-Qube. In May 2006, VeriSign

16    acquired m-Qube and has since integrated and operated many of m-Qube's aggregator

17    systems including, but not limited to, those processing communications and/or mobile

18    content charges that are the subject of this suit. VeriSign is a Delaware corporation with its

19    headquarters and principal place of business in the State of California. VeriSign does

20    business throughout the United States, including the State of California and this County.

21        12.    Defendant Buongiorno USA, Inc. d/b/a Blinko, is a "mobile content provider"

22    and U.S. subsidiary of Italian media giant Buongiorno SpA that creates and distributes,

23    among other things, music ringtones, wallpapers, games, graphics, horoscopes, data, news,

24    and information transmitted or received via chat services (collectively, "content") to cell

25    phone devices. Blinko is a Florida corporation with its headquarters and principal place of

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

4

1  business in Miami Beach, Florida, with offices in Los Gatos, California.  It does business

2  throughout the United States, including the State of California and this County.

3  <div align="center">**JURISDICTION**</div>

4  13.    This Court has jurisdiction over the causes of action asserted herein pursuant

5  to the California Constitution, Article VI, §10, because this case is a cause not given by

6  statute to other trial courts.

7  14.    This Court has jurisdiction over Defendants pursuant to Code of Civil

8  Procedure section § 410.10 because Defendants reside in and/or conduct business in the State

9  of California and/or many of Defendants' wrongful acts arose or emanated from California.

10  <div align="center">**VENUE**</div>

11  15.    Venue is proper in this Court pursuant to Code of Civil Procedure §§ 395 and

12  395.5 because at least one of the Defendants, Blinko, has not filed a statement with the

13  California Secretary of designating its principal office within the State of California.

14  <div align="center">**THE PROBLEM OF RECYLED DIRTY CELL PHONE NUMBERS**</div>

15  16.    Cell phone customers are assigned unique phone numbers for their phones,

16  just like traditional land-lines phones.

17  17.    However, unlike traditional phones, people can use cell phones to pay for

18  certain third-party provided mobile content services, like, for example, "ringtones," or

19  subscriptions for horoscopes, jokes or stock quotes, sent periodically to customers' cell

20  phones.  (A ringtone is simply the sound made by a telephone to indicate an incoming call.

21  The term is most often used to refer to the customizable sounds available on mobile phones.)

22  18.    These mobile content services generally renew automatically each month and

23  the resulting charges are included on the customer's cell phone bill.

24  19.    The instant lawsuit flows from what happens when a carrier reissues (or

25  "recycles") a cellular number previously assigned to one of its customers that has been

26  abandoned.  (Customers abandon numbers for many different reasons, e.g. they move to a

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

<div align="center">5</div>

1  different area code, they change carriers, they no longer want one of their cell phones, or they

2  want a different phone number.)

3      20.    Defendants know that these abandoned numbers are often encumbered with

4  preexisting subscriptions to mobile content services, thus rendering these numbers "dirty."

5      21.    Nevertheless, specifically in order to bilk cell phone customers out of money,

6  Defendants have refused to set up procedures to insure that cell phone customers are not

7  charged for preexisting subscriptions authorized by previous subscribers assigned the

8  numbers.

9      22.    Thus, when a telephone number is reassigned to a new customer, Defendants

10 continue to charge the new customer for subscriptions purchased by the old customers.

11          **THE FACTS RELATING TO THE NAMED PLAINTIFF**

12     23.    On or about July 3, 2006, Plaintiff Aliza Valdez purchased new cell phone

13 service for her personal use from an authorized Sprint sales representative.

14     24.    On that same day, in exchange for a Sprint cell phone service plan of 300

15 "anytime" minutes, Valdez agreed to pay Sprint $39.99 each month for a period of 12

16 months.

17     25.    Upon activating her cellular telephone account on or about July 10, 2006,

18 Sprint provided Valdez a cellular phone number.

19     26.    Unbeknownst to Valdez at the time, Sprint provided her with a recycled

20 "dirty" phone number – one saddled with preexisting obligations, encumbrances and billing

21 arrangements for products and services purportedly purchased by the previous cell phone

22 subscriber assigned that number.

23     27.    Thus, beginning on or about July 17, 2006 – not more than a week after

24 Valdez obtained her cell phone number and started receiving service from Sprint – and

25 continuing through September 17, 2006, Valdez's cell phone account was charged for

26

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

6

1  multiple unwanted "premium" services in the form of text message "alerts" and "ringtones"

2  from Defendants.

3       28.    At no time did Valdez authorize the purchase of these products and services

4  offered by Defendants and at no time did Valdez consent to Defendants' sending of text

5  message alerts or ringtones to her telephone number.

6       29.    Throughout the relevant time period, Defendants caused Sprint to bill Valdez

7  a monthly premium text "message" service charge in the amount of $9.99 for so-called "Text

8  Alerts" allegedly provided by Defendants.  For instance, on or about July 17, 2006

9  Defendants charged Valdez $9.99 for premium message services described as "42222 Text

10  Alerts."  Similarly, on or about, August 17, 2006 Defendants charged Valdez $9.99 for

11  premium message services described as "42222 Text Alerts."  On or about September 17,

12  2006 Defendants again charged Valdez $9.99 for premium message services described as

13  "42222 Text Alerts."

14       30.    During the relevant time period, Defendants also caused Sprint to bill Valdez

15  a premium "ringer" service charge of $3.99 on several occasions.  For instance, on August

16  12, 2006 Defendants charged Valdez $3.99 for premium ringer services described as "42222

17  Ringtone."  Similarly, on or about September 4, Defendants charged Valdez $3.99 for

18  premium ringer services described as "42222 Ringtone."

19       31.    At no time did Valdez authorize Sprint, Blinko, m-Qube or anyone else to bill

20  her for these charges.  On or about September 15, 2006, Valdez first became aware of the

21  unauthorized charges on her August bill for which Sprint was billing her.  Valdez thereafter

22  contacted Sprint to complain that she did not authorize the purchase of any product or service

23  associated with Blinko's charges and disputed that she was responsible for paying such

24  unauthorized charges.

25       32.    A Sprint representative agreed to credit Valdez for some of the unauthorized

26  charges but advised Valdez to expect to continue to be billed for similar charges each month

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

7

1   for the duration of her contract. Valdez was advised by a Sprint representative that it would

2   continue to bill Valdez for such premium services until Sprint received notice from the

3   purported third-party mobile content provider (i.e., Blinko) to no longer bill for such

4   services, despite Valdez's request not to be billed for such charges.

5       33.    Sprint also informed Valdez that she must have provided her consent to

6   receive such premium text message services and to pay for them, though at no time did

7   Sprint attempt to verify Valdez's purported authorization of these charges or undertake to

8   resolve the billing dispute. Rather, Sprint simply "passed the buck," advising Valdez to

9   contact the third-party vendor, Blinko.

10      34.    Thereafter, Valdez contacted Blinko and on or about September 15, 2006, and

11  Blinko provided Valdez with a copy of Valdez's purported authorization to purchase the

12  products or services associated with the Blinko charges being billed by Sprint

13      35.    The purported authorization to be billed for such charges was supposedly

14  obtained from an unidentified person with the same telephone number eventually assigned by

15  Sprint to Valdez; however, the authorization for the subject charges was purportedly obtained

16  on February 16, 2006 – a date more than **four months** <u>prior</u> to the time that Valdez

17  purchased her cell phone service from Sprint, obtained that same cell phone number from

18  Sprint, or started receiving Sprint service. Valdez could not possibly have authorized the

19  charges for which she was being billed.

20

21  ## DEFENDANTS HAVE CAUSED TO BE BILLED AND COLLECTED VAST SUMS IN UNAUTHORIZED MOBILE CONTENT CHARGES

22

23      36.    In order to tap into the emerging wireless content marketplace and make

24  content services available to wireless consumers, content providers such as Blinko must first

25  obtain access to wireless carriers' mobile communications networks and they frequently do

26  so by "partnering" with aggregators such as m-Qube and VeriSign that provide the content

27  providers direct access to the carriers through existing relationships.

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
8

37.    m-Qube and VeriSign have developed vast distribution and billing systems that integrate into the wireless networks of some of the largest wireless carriers nationwide, including Verizon, Cingular, Sprint Nextel, T-Mobile, Alltel, and US Cellular, among others.

38.    Prior to its May 2006 purchase of m-Qube, VeriSign operated its own aggregator systems including, but not limited to, those processing communications and/or charges associated with recycled telephone numbers. Since its May 2006 purchase of m-Qube, VeriSign has integrated and operated many of m-Qube's aggregator systems including, but not limited to, those processing communications and/or charges associated with recycled telephone numbers.

39.    While aggregators such as m-Qube and VeriSign charge their content provider clients some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill the carriers' customers: each time a charge is incurred in connection with an alleged purchase of mobile content services offered by a content provider, the aggregator and the content provider cause the charge to be billed directly on the cellular telephone bill of the carrier's customer currently assigned the telephone number claimed to be associated with the purchase.

40.    The carrier then bills and collects the charges from its current customer, retains a substantial portion of the proceeds as its "revenue share" and then remits the balance to the aggregator, e.g., m-Qube or VeriSign, who retains a percentage of the balance in the form of its own "revenue share" and then remits the balance to its content provider client, e.g., Blinko.

41.    As alleged previously, Defendants know that the carriers routinely "recycle" so-called "dirty" telephone numbers to their customers when they sign up for new cellular telephone service. Indeed, Blinko's former president, Burton Katz has publicly acknowledged the problem of recycled dirty numbers to be its "largest challenge,"

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
9

1  "Mystery" billing and refurbished phone numbers. This has become
   perhaps our largest challenge, and is something we are aggressively
2  working to address with our carrier partners. We have found instances
   where customers have been charged when that customer acquired a
3  "refurbished" mobile phone number from their carrier. A "refurbished"
   number is number given to a customer that was previously used by another
4  of the carrier's subscribers. If the previous subscriber failed to cancel their
   Blinko subscription before giving up the number, the "refurbished"
5  number will continue to be billed.

6       42.    m-Qube, VeriSign and Blinko have registered thousands of transactions and

7  processed many thousands of dollars in transactions over the years and have profited

8  enormously from their arrangement with their carrier partners, aggregator partners and

9  content provider partners.

10      43.    The vast majority of the conduct that led to the billing and collecting of

11 unauthorized cell phone charges either occurred in California or was directed from here. The

12 principal offices of m-Qube and VeriSign are located in California. The act of processing

13 unauthorized charges to consumers' cell phone bills frequently begins in California or is

14 under the control of persons located within California. Many of the systems employed by the

15 aggregator Defendants were distributed, developed and/or manufactured by persons located

16 in California. Calls from subscribers nationwide to Defendants route to a California location

17 and subscribers are directed by the carriers to correspond with a Defendant at a California

18 location. Press releases by the aggregator Defendants frequently disseminate from

19 California. Business decisions for each aggregator Defendant are made in California.

20      44.    Defendants have not only sanctioned this illegal billing, they have actively

21 and knowingly promoted it by, *inter alia*, actively negotiating and facilitating partnerships

22 between and amongst each other and/or other carriers, aggregators and content providers

23 wherein (1) the content providers and aggregators do not adequately verify whether a

24 telephone number has been recycled; (2) the carriers do not adequately verify the details of

25 the purported authorization to place charges on a cell phone customer's bill, including the

26 identity of the person who supposedly consented to the service, the date such consent was

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
10

1    obtained or the manner in which it was obtained; and/or (3) charges are illegally inserted into

2    customers' billing statements for subscriptions authorized by the subscriber previously

3    assigned the telephone number.

4        45.    If Defendants wanted to end this illegal billing, they could do so in an instant.

5    For instance, all they would have to do is ensure that the carriers and content providers report

6    to each other and to the aggregators (1) the identity of the person who subscribed to the

7    services in question, along with the date of that subscription, and (2) the identity of the

8    current owner of the phone number in question, along with the date he or she obtained that

9    number. If the identities do not match or the dates are inconsistent (i.e. the carrier's records

10   show that the consent date came prior to the date the current owner obtained his or her

11   number), no charges would be included on the customer's billing statement.

12       46.    Defendants have intentionally helped create and maintain a system wherein

13   each participant has a piece of the information and thus can, at least, claim (false as it is) that

14   the blame rests solely at the feet of another. Such system constitutes a deliberate and willful

15   scheme to cheat large numbers of people out of small amounts of money.

16       47.    As a direct result, Defendants have profited enormously from this illegal

17   practice, all the while being able to maintain plausible deniability.

18                          **CLASS ALLEGATIONS**

19       48.    Plaintiff brings this action, pursuant to Code of Civil Procedure § 382 on

20   behalf of herself and a class, defined as follows:

21           A.    The "Class:" A class consisting of all wireless telephone subscribers in the

22   nation who were charged by VeriSign, m-Qube, and/or Blinko for mobile content services

23   where the date of authorization for such charges preceded the date that the telephone number

24   was assigned to such subscriber by his or her wireless carrier; provided, however, that the

25   following are excluded from this proposed Class: (i) the defendants, and (ii) any employee of

26   defendants.

27

28
___
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

49.     The Class consists of thousands of individuals and other entities, making joinder impractical, in satisfaction of Code of Civil Procedure § 382.

50.     The claims of Plaintiff are typical of the claims of all of the other members of the Class.

51.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the class.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the class, and have the financial resources to do so.  Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

52.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

53.     Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the respective class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

54.     The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class.  Plaintiff and the other Class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

55.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include but are not limited to the following:

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
12

1         (a)     Whether Defendants have unjustly received money belonging to

2    Plaintiff and the Class and whether under principles of equity and good conscience,

3    they should not be permitted to retain it;

4         (b)     Whether Defendants tortiously interfered with Plaintiff's and the

5    Class's contracts with their wireless carriers by causing them to be charged for

6    products and services by their carrier that were authorized by the prior owner of their

7    telephone number.

8         (c)     Whether Defendants' conduct described herein violates California

9    Business and Professions Code sections 17200, *et seq.*

10    <div align="center">**FIRST CAUSE OF ACTION**</div>

11    <div align="center">**(Restitution/Unjust Enrichment on behalf of the Class)**</div>

12    56.    Plaintiff incorporates by reference the foregoing allegations.

13    57.    A benefit has been conferred upon Defendants by Plaintiff and the Class.

14    Defendants have received and retain money belonging to Plaintiff and the Class resulting

15    from their causing to billed and collected unauthorized third party mobile content charges,

16    and in particular, their practice of systematically, repeatedly and without authorization,

17    causing Plaintiff and the Class of cellular telephone customers to be billed by their cellular

18    carriers for mobile content services authorized to be purchased by the previous subscriber

19    assigned such telephone numbers.

20    58.    Defendants appreciate or have knowledge of said benefit.

21    59.    Under principles of equity and good conscience, Defendants should not be

22    permitted to retain the money belonging to Plaintiff and the Class which Defendants have

23    unjustly received as a result of their actions.

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

<div align="center">13</div>

1

## SECOND CAUSE OF ACTION

2

### (Tortious Interference with a Contract on behalf of the Class)

3        60.      Plaintiff incorporates by reference the foregoing allegations.

4        61.      Plaintiff and the Class had contractual relationships with their wireless carriers

5    whereby they agreed to pay a certain sum of money in exchange for activation of their

6    cellular telephone accounts and their carriers' promise to provide various communication and

7    related services to Plaintiff and the Class and to bill Plaintiff and the Class only for products

8    or services the purchase of which they had authorized.

9        62.      Defendants knew of these contractual relationships and intended to and did

10   induce a breach or disruption of the contractual relationships.

11       63.      Defendants intentionally interfered with said contractual relationships through

12   improper motives and/or means by knowingly and/or recklessly repeatedly causing

13   unauthorized charges to be placed on the cellular telephone bills of cellular telephone owners

14   across the nation.

15       64.      Plaintiff and the Class have suffered loss as a direct result of Defendants'

16   conduct.

17

### THIRD CAUSE OF ACTION

18

### (Unlawful, Unfair and Deceptive Business Practices in Violation of California Business & Professions Code § 17200, et seq. on behalf of the Class)

19       65.      Plaintiff incorporates by reference the foregoing allegations.

20       66.      The Unfair Business Practices Act proscribes unfair business competition and

21   defines same to include any "unfair," "unlawful," or "fraudulent" business act or practice.

22   California Business & Professions Code §17200 *et seq.*

23       67.      Defendants violated, and continue to violate this proscription through their

24   conduct as set forth above.

25       68.      Defendants, through their acts of unfair competition, have obtained money

26   from Plaintiff and members of the proposed Class.  Plaintiff and the members of the Class

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

14

1   ask that this Court restore this money to them and enjoin Defendants from continuing their

2   illegal practices.

3        69.    Such conduct is ongoing and continues to this date.  Plaintiff, the Class

4   members and the general public are therefore entitled to the relief described herein.

## PRAYER FOR RELIEF

6       WHEREFORE, Plaintiff Aliza Valdez, on behalf of herself and the Class, prays for

7   the following relief:

8           a)    Certify this case as a class action on behalf of the Class defined above

9   and appoint Aliza Valdez Class Representative, and appoint Jay Edelson and John G.

10  Jacobs, as co-lead counsel;

11          b)    Declare that the actions of Defendants, as set out above, constitute

12  unjust enrichment, tortious interference with a contract, and are in violation of

13  California Business and Professions Code §17200;

14          c)    Enter judgment against Defendants for all economic, monetary,

15  actual, consequential, and compensatory damages caused by Defendant' conduct, and

16  if their conduct is proved willful, award Plaintiff and the Class exemplary damages;

17          d)    Award Plaintiff and the Class reasonable costs and attorneys' fees;

18          e)    Award Plaintiff and the Class pre- and post-judgment interest;

19          f)    Enter judgment for injunctive and/or declaratory relief as is necessary

20  to protect the interests of Plaintiff and the Class;

21          g)    Award such other and further relief as equity and justice may require.

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: October 18, 2007

LAW OFFICES OF TERRY M. GORDON

By: _____

TERRY M. GORDON
One of the Attorneys for ALIZA
VALDEZ, individually and on behalf of
a class of similarly situated individuals

# Exhibit B

10/29/2007   09:13  One Legal, Inc.                          (FAX)415 437 9684          P.003/028

OCT-18-2007(THU) 13:43   0003              (FAX)415 3311225          P. 002/002

**SUMMONS**
*(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

M-QUBE, INC., a Delaware corporation, VERISIGN, INC., a Delaware corporation, and BUONGIORNO USA, INC., a Florida Corporation, d/b/a BLINKO

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ALIZA VALDEZ, individually and on behalf of a class of similarly situated individuals

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org) en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

San Francisco County Superior Court
400 McAllister Street
San Francisco, CA 94102

CASE NUMBER
*(Número del Caso):*

CGC-07-468362

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Terry M. Gordon, Law Offices of Terry M. Gordon
Three Harbor Drive, Suite 215, Sausalito, CA 94965

GORDON PARK-LI

DATE:                                    Clerk, by                CRISTINA E. BAUTISTA        , Deputy
*(Fecha)*  OCT 18 2007          *(Secretaria)*                                      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):*  M-Qube Inc.
   under: [X] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
[American LegalNet, Inc.] [www.USCourtForms.com]

BY FAX

10354151.tiff - 10/18/2007 1:40:01 PM

# Exhibit C

OCT-18-2007(THU) 13:43     0003                    (FAX)415 3311225               P. 002/002

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

| | FOR COURT USE ONLY *(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
M-QUBE, INC., a Delaware corporation, VERISIGN, INC., a Delaware corporation, and BUONGIORNO USA, INC., a Florida Corporation, d/b/a BLINKO

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ALIZA VALDEZ, individually and on behalf of a class of similarly situated individuals

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Francisco County Superior Court<br>400 McAllister Street<br>San Francisco, CA 94102 | CASE NUMBER:<br>*(Número del Caso):* CGC-07-468362 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Terry M. Gordon, Law Offices of Terry M. Gordon
Three Harbor Drive, Suite 215, Sausalito, CA 94965

DATE:                                              Clerk, by                    CRISTINA E. BAUTISTA       , Deputy
*(Fecha)*                                          *(Secretario)*                                          *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* VeriSign Inc.
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

BY FAX

# Exhibit D

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Terry M. Gordon, SBN 75604<br>Law Offices of Terry M. Gordon<br>Three Harbor Drive, Suite 215<br>Sausalito, CA 94965 | FOR COURT USE ONLY |

TELEPHONE NO.: 415-331-3601          FAX NO. *(Optional)*: 415-331-1225
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

PLAINTIFF/PETITIONER: ALIZA VALDEZ, et al.

DEFENDANT/RESPONDENT: M-QUBE, INC., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>07-468362 |
|---|---|

TO *(insert name of party being served)*: CT Corporation System, agent for service of process for M-QUBE, INC.

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: Nov. 14, 2007

Jenny Ryan                                           ▶ _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify)*:

    Civil Case Cover Sheet; General Order re Procedure for Approval of Complex Litigation
    Designation; Notice to Plaintiff (re Case Management Conference); Alternative Dispute Resolution
    (ADR) Information Package; form of Stipulation to ADR; form of Case Management Statement;
    Superior Court of California Judicial Mediation Program information

*(To be completed by recipient)*:

Date this form is signed: _____

_____          ▶ _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,       (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                    ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>PCS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.USCourtForms.com |

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Terry M. Gordon, SBN 75604
Law Offices of Terry M. Gordon
Three Harbor Drive, Suite 215
Sausalito, CA 94965

TELEPHONE NO.: 415-331-3601    FAX NO. *(Optional)*: 415-331-1225
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

PLAINTIFF/PETITIONER: ALIZA VALDEZ, et al.

DEFENDANT/RESPONDENT: M-QUBE, INC., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 07-468362 |
|---|---|

TO *(insert name of party being served)*: CT Corporation System, agent for service of process for VERISIGN, INC.

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: Nov. 14, 2007

Jenny Ryan
_____
(TYPE OR PRINT NAME)          ▶          _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify)*:

Civil Case Cover Sheet; General Order re Procedure for Approval of Complex Litigation Designation; Notice to Plaintiff (re Case Management Conference); Alternative Dispute Resolution (ADR) Information Package; form of Stipulation to ADR; form of Case Management Statement; Superior Court of California Judicial Mediation Program information

*(To be completed by recipient)*:

Date this form is signed: _____

_____          ▶          _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1 Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.USCourtForms.com

# Exhibit E

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Terry M. Gordon, SBN # 75604
Law Offices of Terry M. Gordon
Three Harbor Drive, Suite 215
Sausalito, CA 94956

TELEPHONE NO.: 415-331-3601        FAX NO.: 415-331-1225
ATTORNEY FOR *(Name):* Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

**FOR COURT USE ONLY**

*ENDORSED*
*F I L E D*
San Francisco County Superior Court

3 2007

PARK-LI, Clerk
NA E. BAUTISTA
Deputy Clerk

CASE NAME:
Aliza Valdez v. m-Qube, Inc., VeriSign, Inc., Buongiorno USA, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | CGC 07- 468362 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is    ☐ is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*  Three (3)
5. This case ☑ is    ☐ is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 18, 2007

Terry M. Gordon
_____
(TYPE OR PRINT NAME)        *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

Page 1 of 2

**BY FAX**

# FILED

San Francisco County Superior Court

APR 1 6 2007

GORDON PARK-LI, Clerk

BY: _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| In re:<br><br>COMPLEX LITIGATION | )<br>)<br>)<br>)  **GENERAL ORDER RE:**<br>)  **PROCEDURE FOR APPROVAL**<br>)  **OF COMPLEX LITIGATION**<br>)  **DESIGNATION**<br>)<br>)<br>)<br>)  The Honorable Richard A. Kramer |

This Order shall apply to any case designated as a Complex Case on the Civil Case Cover Sheet (Judicial Council Form CM-010, Rule 3.220, Cal. Rules of Court) filed in San Francisco Superior Court. As to all such cases:

1. The fee(s) required by California Government Code section 26826.4 shall be paid upon filing such designation.

2. No case shall be assigned to the Complex Litigation Department until an Application For Approval of Complex Litigation Designation has been made in accordance with this Order, and the Court has ordered the case so assigned.

-1-
GENERAL ORDER re: COMPLEX LITIGATION DESIGNATION APPROVAL

3. An Application for Approval of Complex Designation must be filed within 10 days of the date of filing of the Civil Case Cover Sheet Complex Case Designation, setting forth with specificity the reasons that the case should be assigned to the Complex Litigation Department in accordance with the factors set forth in Rule 3.400 *et seq*, California Rules of Court. A copy of such Application, together with a copy of the operative Complaint and of the Civil Case Cover Sheet, shall be delivered to the clerk of Department 304 promptly upon filing. Copies of the Application shall be served on all other parties who have been served with the Complaint or have appeared in the case.

4. A Complex Case Designation which does not comply with this Order will be deemed denied without further order.

5. Until such time as the Court issues an order assigning the case to the Complex Litigation Department, it will remain in its otherwise assigned case management plan and shall be subject to all applicable case management rules and procedures. *See* Rule 3 – Civil Case Management, San Francisco Superior Court Local Rules of Court.

6. Upon the denial of Complex Case Designation, either under paragraph 4 hereof or by specific court order, and no sooner than 60 days after the date of filing the Civil Case Cover Sheet, the Clerk of the Court shall, upon request, refund any fees paid pursuant to California Government Code section 26826.4(a) or (b). *See* Cal. Gov. Code § 26826.4(d).

7. This Order does not modify the provisions of Rule 3.403(b), California Rules of Court.

IT IS SO ORDERED.

Dated: April 13, 2007

RICHARD A. KRAMER
Judge of the Superior Court

-2-
GENERAL ORDER re: COMPLEX LITIGATION DESIGNATION APPROVAL

CASE NUMBER: CGC-07-468362  ALIZA VALDEZ VS. M-QUBE,INC., A DELAWARE CORPOR

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

DATE:    MAR-21-2008

TIME:    9:00AM

PLACE:   Department 212
         400 McAllister Street
         San Francisco, CA 94102-3680

All parties must appear and comply with Local Rule 3.

> CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.
>
> However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

> IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.
> (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

# Alternative Dispute Resolution (ADR) Information Package

# Alternatives to Trial

# Here are some other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 201.9(c))

**Superior Court of California**
**County of San Francisco**

ADR-1   1/06  (bc)

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

# Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can be speedier.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can permit more participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR can be flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

ADR-1   1/06  (bc)

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

ADR-1  1/06  (bc)

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for civil matters; each program is described below:

1)   Judicial arbitration
2)   Mediation
3)   The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

## Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

## Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-8913

## Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

ADR-I  1/06  (bc)

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

ADR-1  1/06 (bc)

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $200 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 982-1600.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution Coordinator,
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

ADR-1  1/06  (bc)

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |

**The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:**

☐ Private Mediation          ☐ **Mediation Services of BASF**    ☐    **Judicial Mediation**
☐ Binding arbitration
☐ Non-binding judicial arbitration                          Judge _____
☐ BASF Early Settlement Program                          Judge _____
☐ Other ADR process (describe) _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  3/06          **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

| | |
|---|---|
| | **CM-110** |

FOR COURT USE ONLY

TELEPHONE NO.:                    FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

**CASE MANAGEMENT STATEMENT**

(Check one):   ☐ **UNLIMITED CASE**   ☐ **LIMITED CASE**
(Amount demanded        (Amount demanded is $25,000
exceeds $25,000)           or less)

CASE NUMBER:

**A CASE MANAGEMENT CONFERENCE is scheduled as follows:**

Date:                    Time:              Dept.:              Div.:              Room:

Address of court *(if different from the address above):*

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint   ☐ cross-complaint   *(describe, including causes of action):*

**CASE MANAGEMENT STATEMENT**

Page 1 of 4
Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request ☐ a jury trial   ☐ a nonjury trial   *(if more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐ The trial has been set for *(date):*
b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐ days *(specify number):*
b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  Fax number:
f.  E-mail address:
g.  Party represented:
☐ Additional representation is described in Attachment 8.

9.  **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a.  *Counsel* ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.  ☐ The case has gone to an ADR process *(indicate status):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply)*:

    (1)  ☐  Mediation

    (2)  ☐  Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 *(discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)*

    (3)  ☐  Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 *(discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)*

    (4)  ☐  Binding judicial arbitration

    (5)  ☐  Binding private arbitration

    (6)  ☐  Neutral case evaluation

    (7)  ☐  Other *(specify)*:

    e.  ☐  This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

    f.  ☐  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    g.  ☐  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**

    ☐  The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**

    a.  ☐  Insurance carrier, if any, for party filing this statement *(name)*:

    b.  Reservation of rights:  ☐ Yes  ☐ No

    c.  ☐  Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy  ☐ Other *(specify)*:

Status:

**14. Related cases, consolidation, and coordination**

    a.  ☐  There are companion, underlying, or related cases.

        (1) Name of case:

        (2) Name of court:

        (3) Case number:

        (4) Status:

        ☐  Additional cases are described in Attachment 14a.

    b.  ☐  A motion to  ☐ consolidate  ☐ coordinate  will be filed by *(name party)*:

**15. Bifurcation**

    ☐  The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**

    ☐  The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated *(specify):*

**18. Economic Litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**19. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**20. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**21. Case management orders**

Previous case management orders in this case are *(check one):* ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____          ► _____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY)

_____          ► _____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached

CM-110 [Rev. January 1, 2007]                    **CASE MANAGEMENT STATEMENT**                    Page 4 of 4



# Superior Court of California
## County of San Francisco

## Judicial Mediation Program

### Introducing a new court alternative dispute resolution program that provides judicial mediation of complex civil cases

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David L. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable John J. Conway
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Curtis E. A. Karnow
The Honorable Patrick J. Mahoney

The Honorable Tomar Mason
The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Evans Quidachay
The Honorable A. James Robertson, II
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

### Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

12/15/06

# MEDIATION SERVICES

## THE BAR ASSOCIATION OF SAN FRANCISCO



THE BAR ASSOCIATION OF
SAN FRANCISCO

## SUCCESS STORIES

"The mediator settled a case that opposing counsel and I honestly believed could not be settled."

—*Richard W. Osman, Esq.*
*Bertrand, Fox & Elliot*

"Much thanks to the mediator and The Bar Association of San Francisco. The mediator was extraordinary; he went above and beyond the call of duty, and his knowledge of real property issues greatly assisted the parties."

—*Robert P. Travis, Esq.*
*Travis and Pon*

"The mediator was excellent! He was effective with some strong, forceful personalities."

—*Denise A. Leadbetter, Esq.*
*Zacks, Utrecht & Leadbetter*

Marilyn O'Toole
Marc Paisin
Herman D. Papa
Basil Plastiras
Marco Quazzo
Steven Rosenberg
Jeffrey A. Ross
Alan R. Rothstein
Stephen B. Ruben
Cheryl A. Sena
Malcolm Sher
Elizabeth H. Shwiff
Arthur R. Siegel
Carol Ruth Silver
Teri H. Sklar
Roger W. Sleight
Yaroslav Sochynsky
Jason H. Stein
Michael J. Timpane
Elizabeth A. Tippin
Charles A. Tracy
Claudia M. Viera
Gregory D. Walker
Albert B. Wenzell, Jr.
Arne Werchick
Andrew R. Weiner
Joel Zebrack

## What is mediation?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable. Mediation tends to be less formal, take less time and cost less than arbitration or a court action. The mediator does not make a decision for you, as a judge or arbitrator might. Rather, they help you come to a resolution that all parties are satisfied with, which is binding only if everyone agrees.

## What is BASF's Mediation Service?

Mediation Services was established in November 2003 by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This is a traditional mediation service providing experienced private mediators, and is an approved alternative to court ordered Arbitration or Early Settlement.

## How does it work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; parties may ask experienced BASF staff to suggest a mediator, request three biographies to choose from, or choose a particular mediator from our Web site. To use a BASF mediator, a simple Consent to Mediate form, with the administrative fee, is sent to BASF.

## Who can use the service?

The service can be utilized by anyone whether or not the dispute has been filed in a court. If a legal action is already underway, it can be used at any time during the litigation process and is not limited to San Francisco County litigants. Our mediators are ready to assist in almost any area needed, ranging from multi-party commercial matters to individuals in conflict.

## How much does the service cost?

Our mediators generously provide one hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro-bono hours, parties must file the Consent to Mediate form with BASF. Hourly fees beyond those three hours vary depending on the mediator selected. BASF charges a small administrative fee per party, which pays for the costs of running the program. Parties can request a waiver of the fee based on financial hardship.

## Who are the mediators?

BASF's mediators are experienced mediation professionals who are available to assist in most areas of dispute. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours of formal mediation training.

# BASF Mediators

| | | |
|---|---|---|
| Koorosh Afshari | Arnold B. Haims | Marilyn O'Toole |
| Robert E. Aune | Ben Hamburg | Marc Paisin |
| Elizabeth E. Bader | Michael D. Handlos | Herman D. Papa |
| Eileen Barker | Lynn Hansen | Basil Plashras |
| Sandra Blair | John R. Heisse, II | Marco Quazza |
| Burton F. Bolluch | Kay E. Henden | Steven Rosenberg |
| Bradley Bostick | Frederick C. Hertz | Jeffrey A. Ross |
| Angela Bradstreet | Bruce Highman | Alan R. Rofistein |
| George B. Brewster | Yolanda M. Jackson | Stephen B. Ruben |
| Fred D. Butler | Richard Jaeger | Cheryl A. Sena |
| Keith Christianson | Roberta R. Jeffrey | Malcolm Sher |
| Thomas A. Cohen | Kenneth F. Johnson | Elizabeth H. Shwiff |
| Nancy de lia | Steger P. Johnson | Arthur R. Siegel |
| Mark J. Divelbiss | Gail Killefer | Carol Ruth Silver |
| Martin H. Dodd | Carol M. Kingsley | Teri H. Sklar |
| Paul Dubow | Chris Knowlton | Roger W. Sleight |
| David H. Fielding | Guy O. Kornblum | Yaroslav Sochynsky |
| Robert T. Fries | Dr. Urs Loeuchli | Jason H. Stein |
| Mark Gainer | Paula Lawton | Michael J. Timbanie |
| Sanford Gernikel | Theodore R. Lee | Elizabeth A. Tippin |
| Gerald F. George | Arthur D. Levy | Charles A. Tracy |
| Mathew J. Geyer | Robert T. Lynch | Claudia M. Viera |
| Judith A. Gordon | Sharon T. Maier | Gregory D. Walker |
| Stephen J. Gorski | Michael L. Marx | Albert B. Wenzell, Jr. |
| Laurel Lithman Gotthelf | Judith A. Mazia | Arne Werchick |
| Judge Ray Greenberg (Ret.) | David J. Meadows | Andrew K. Wiener |
| Paul D. Gutierrez | Thomas C. Nagle | Joel Zebrack |

MEDIATOR BIOGRAPHIES & PHOTOGRAPHS: WWW.SFBAR.ORG/MEDIATION

2/07